L. G. Tucker and Estate of Anne M. Tucker, Deceased, Kanawha Banking & Trust Company, Executor v. Commissioner. C. E. Silling, Sr., and Marian R. Silling v. Commissioner.
Tucker v. Commissioner
Docket Nos. 53911, 53539.
United States Tax Court
T.C. Memo 1955-294; 1955 Tax Ct. Memo LEXIS 39; 14 T.C.M. (CCH) 1136; T.C.M. (RIA) 55294; October 31, 1955
*39 In March 1951, petitioners Tucker and Silling decided to terminate their association as partners in an architectural firm. The partnership possessed no substantial tangible assets at that time, but was then engaged in certain contracts which the partners believed would produce substantial amounts of income during subsequent years. Petitioners entered into an agreement providing for the payment to Tucker of $24,000 in 1951, $12,000 in 1952, and $4,000 on February 28, 1953. Such payments were denominated in the agreement as Tucker's distributive share of partnership income. The agreement required that Tucker formally sell his interest in the partnership to Silling on March 1, 1953, for the sum of $1.00. Tucker reported the transaction on his return for 1951 as the sale of a capital asset resulting in capital gain, whereas the partnership's return and the return filed by Silling for 1951 indicated that Tucker remained a partner in the firm throughout that year and that the $24,000 paid to him was his distributive share of partnership income. Held, Tucker sold his interest in the partnership to Silling for the sum of $40,000, such sum to be paid to Tucker over a two-year period. *40 Wood Bouldin, Jr., Esq., Kanawha Banking & Trust Building, Charleston, W. Va., and Charles B. Stacy, Esq., for the petitioners in Docket No. 53911. J. B. Fisher, Esq., Kanawha Valley Building, Charleston, W. Va., for the petitioners in Docket No. 53539. John C. Calhoun, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involved deficiencies in income tax determined against petitioners for the taxable year 1951, as follows: Docket No.
Petitioners
Deficiency
53539
C. E. Silling, Sr., and
$16,099.33
Marian R. Silling [1]
53911
L. G. Tucker and Estate
1,598.66
of Anne M. Tucker,
Dec'd, et al.
The sole issue to be decided is whether the sum of $24,000, received by petitioner Tucker in 1951, was received as partial consideration for the sale of his interest *41 in the partnership of "Tucker & Silling," or whether it was received as his distributive share of the net income of the partnership for that year. Findings of Fact Petitioners in Docket No. 53539 are C. E. Silling, Sr. (hereinafter referred to as Silling), and his wife, Marian R. Silling. They resided in Charleston, West Virginia, in 1951 and filed a joint income tax return for that year with the collector of internal revenue for the district of West Virginia. Petitioners in Docket No. 53911 are L. G. Tucker and the Estate of Anne M. Tucker. L. G. Tucker (hereinafter referred to as Tucker) and Anne M. Tucker were husband and wife in 1951, residing in Charleston, West Virginia. They also filed a joint income tax return for that year with the collector of internal revenue for the district of West Virginia. Both Tucker and Silling are architects and have been practicing their profession for many years. In 1938, they formed a partnership for the practice of architecture under the name of "Tucker & Silling." Their partnership agreement provided that, in the event of the death or the voluntary withdrawal of one of the partners from the partnership, the interest of such partner in the *42 partnership should become the property of the remaining partner; however, the estate of the deceased partner, or the retiring partner, was to be entitled to one-half of the net earnings of the partnership earned and uncollected at the time of death or withdrawal. It was further provided that if Tucker and Silling mutually agreed to dissolve the partnership, then all the net assets were to be divided equally between them. The original partnership agreement provided for the equal division of profits between Tucker and Silling, but by subsequent agreements, the distributive share of partnership income that Tucker was to receive was reduced until it finally became 20 per cent. The reduction of Tucker's share in the earnings of the partnership was a source of disagreement between the partners and, in addition, they failed to agree about the policies of the firm. In March 1951, Silling wrote Tucker stating that he wished to have their association as partners terminated. Upon receiving this letter from Silling, Tucker consulted with an attorney who was a mutual friend of both partners. Tucker requested this attorney to arrange for the termination of the partnership on terms whereby he would *43 receive $12,000 annually for a five-year period, retain the right to use the facilities of the office during such period, but was to have no obligation to render services to the firm. The $60,000 in cash payments sought by Tucker was based on his estimate as to his proportionate share of the net income which would be earned by the partnership in the performance of various architectural contracts which it possessed at that time. Tucker asked a certified public accountant to consult with his attorney regarding the tax aspects of the situation. However, Tucker's attorney informed said accountant that he was primarily interested in arriving at a settlement which would provide for the termination of the partnership and that he was not seriously concerned with the tax consequences. Silling also consulted a certified public accountant regarding the tax problems inherent in the termination of the partnership. Silling and Tucker's attorney then met in the office of Silling's accountant to discuss a proposed settlement agreement. Silling rejected Tucker's demand for $60,000, stating that this sum had not as yet been earned on the contracts on which the partnership was then engaged, and might *44 only be earned over a period of several years. Silling then made a counter-offer of $40,000 based on his estimate of what Tucker's share of the profits would be from such contracts. Certain revisions were then made in the proposed agreement and, as subsequently signed by petitioners Tucker and Silling, dated as of March 10, 1951, it states in part, as follows: "4. NOW, THEREFORE, after an examination of the partnership books, a consideration of the amount and value of the partnership contracts now in progress and incompleted, it is agreed as follows: "(a) On and after the date of this agreement, Silling agrees to assume complete management of the partnership affairs of Tucker & Silling, Architects, to complete or cause to be completed all contracts now in progress for the benefit of the firm, and to indemnify and save Tucker harmless from all debts and obligations arising from the said contracts or from the business of the said partnership; "(b) During the period of this agreement, Tucker is relieved of any obligation to work in connection with the office of Tucker & Silling, Architects; and he agrees that he will not make contracts or create obligations of any kind involving *45 the partnership of Tucker & Silling. "(c) The firm name of Tucker & Silling may be used so long as presently existing contracts are incomplete, and during this interim, new contracts may be made by C. E. Silling, dba Tucker & Silling, Architects, and upon the completion of the said existing contracts the right to use the name of Tucker & Silling shall cease and determine; "(d) Tucker's share of the partnership income, current and accumulated to December 31, 1951, is hereby stipulated to be Twenty-four Thousand Dollars ($24,000.00) and this sum shall be distributed to the said Tucker and the remainder, if any, shall belong to Silling; "(e) Tucker's share of the partnership income for the calendar year 1952 is hereby stipulated to be Twelve Thousand Dollars ($12,000.00) and that sum shall be distributed to the said Tucker during the year 1952, and the remainder, if any, shall belong to Silling; "(f) Tucker's share of the partnership income for the period January 1, 1953, to February 28, 1953, is hereby stipulated to be Four Thousand Dollars ($4,000.00) and that sum shall be distributed to the said Tucker on February 28, 1953, and the remainder, if any, shall belong to Silling; *46 "(g) On March 1, 1953, the said partnership shall be dissolved and terminated and on that date Tucker will sell and Silling will purchase for the sum of $1.00 all of the remaining partnership assets of every kind and character." Following the execution of this agreement, Tucker performed no further services for the firm of "Tucker & Silling," only visiting the office on one occasion - to get his personal belongings. Tucker subsequently entered into a partnership with another architect in 1951. In accordance with the agreement of March 1951, Tucker received $24,000 in 1951, $12,000 in 1952, and $4,000 in 1953. On February 27, 1953, Tucker executed a bill of sale to Silling which stated that Tucker was selling his interest in all partnership property for $1.00. Tucker reported the transaction on the joint return which he and his wife filed for 1951 as the sale of a capital asset, namely, his interest in the partnership of "Tucker & Silling," treating it as one resulting in longterm capital gains. A partnership return under the name "Tucker and Silling" was filed for the year 1951 with the collector of internal revenue for the district of West Virginia. This return was signed only *47 by Silling and his accountant, and Tucker was listed thereon as a partner whose distributive share of net income for the year 1951 was $24,000. Tucker did not see this return. On the joint return which Silling and his wife filed for 1951, Silling reported his distributive share of partnership income in accordance with the aforementioned partnership return, thus treating the $24,000 paid to Tucker as income reportable by Tucker rather than by himself. In Docket No. 53911, involving petitioner Tucker, respondent determined that said $24,000 was Tucker's distributive share of partnership income for 1951. In Docket No. 53539, involving petitioner Silling, respondent determined that the said $24,000 was to be added to the distributive share of partnership income reported by Silling. Opinion RICE, Judge: We must decide whether petitioner Tucker sold his interest in the partnership, "Tucker & Silling," in 1951, thereby realizing capital gains on the transaction, or whether the essence of the agreement which he entered into with his partner, Silling, in March 1951 was that he continue as a limited and inactive partner for approximately a two-year period, during which he would receive *48 $40,000, his share of the expected profits on contracts then in work, but at the end of which time he would sell his partnership interest to Silling for the sum of $1.00. Respondent has made inconsistent determinations with respect to petitioners, Tucker & Silling, in order to protect the revenue and their cases were consolidated for hearing and opinion. Each of the former partners places a different interpretation on the transaction of March 1951, which terminated their active association. The March 10th agreement, itself, appears to require that the partnership continue until March 1, 1953, and that at the end of that period, Tucker sell his interest therein to Silling for the sum of $1.00. However, we must construe the agreement in accordance with its substance and effect rather than its form and appearance. . The true nature of the agreement between the parties, rather than any particular language in the formal agreement, must govern the tax consequences. The question, therefore, is what did the two former partners accomplish by their negotiations which culminated in the formal agreement of March 10, 1951. Was Tucker's interest *49 in the partnership an asset of substantial value or does the subsequent sale of such interest for the sum of $1.00 accurately reflect the views of the parties? The record indicates that the partnership had little in the way of tangible assets. According to the testimony of Silling, Tucker's partnership interest had little or no cash value since all that an architectural partnership required in the way of capital was some drafting boards and the ability of the partners. Certainly, at the time the partnership was formed in 1938, the partners, themselves, regarded their interests in the partnership as being of such insignificant value that their partnership agreement required no payment to be made to the estate of a deceased partner or to a retiring partner for his interest in the firm. However, that same partnership agreement provided that, in the event of the dissolution of the partnership, the assets of the partnership were to be divided equally between them. Though the partnership had few tangible assets and no salable good will at the time petitioner Tucker entered into negotiations regarding his withdrawal from the firm, the partnership did possess certain very valuable assets which *50 made an interest therein one of considerable value. Such assets consisted of various incompleted architectural contracts and were the major factor in the bargaining between the partners. Both Tucker and Silling calculated the amount to be paid to the retiring partner on the basis of estimates as to the amount which such partner would receive as his distributive share of the earnings to be realized from these contracts if he were to remain a partner until their completion. Granted, that had Tucker remained in the firm as a partner, to receive his distributive share of the actual earnings from such contracts, or to be charged with his distributive share of losses, any such earnings would be ordinary income to him. However, the contract which the parties entered into as of March 10, 1951, to terminate their active association, did not so provide. Instead, Tucker was to receive the stipulated sum of $40,000; $24,000 of which was payable in 1951, $12,000 in 1952, and $4,000 on February 28, 1953. Tucker would not share in any excess amounts earned on these contracts nor receive any share of the profits earned on other contracts performed by the firm prior to February 28, 1953. Nor would *51 he share in any losses of the firm, perform any services, or have any voice in policy matters. He was expressly forbidden from making any contracts or creating any obligations involving "the partnership of Tucker & Silling." Tucker's participation in the firm's activities was thus limited solely to the receipt of specified sums of money. He visited the offices of the firm but once after March 10, 1951, then only to get his personal belongings. During that same year, he entered into partnership with another architect. Under these circumstances, we cannot say that the parties to this agreement really intended or believed that Tucker was to continue as a partner in the firm until March 1, 1953, even in an inactive capacity. We, therefore, hold that Tucker sold his interest in the partnership to Silling as of March 10, 1951, arriving at a value for such interest on the basis of the principal assets of the partnership at that time, namely, the anticipated earnings from contracts then being performed by the partnership. Although the purchase price may have been largely determined on the basis of such anticipated earnings, this does not constitute an assignment of income so long as the *52 services had not yet been performed and these estimated amounts were not yet earned. See (C.A. 1, 1930), certiorari denied ; . The $24,000 received by Tucker in 1951 was partial consideration for the purchase of his partnership interest. Such amount must be treated by petitioner Silling as the purchase price of a capital asset and cannot be deducted by him from his distributive share of the earnings of the firm during 1951. The parties have referred us to (C.A. 9, 1955); (C.A. 4, 1939); (C.A. 2, 1937); and However, these cases are distinguishable on their facts since they involved situations where the amounts paid to the retiring partner represented compensation for past services or constituted the retiring partner's distributive share of profits earned but uncollected at the date of retirement. In Docket No. 53911, decision will be entered *53 for the petitioners. In Docket No. 53539, decision will be entered for the respondent. Footnotes
1. Petitioners, C. E. Silling and Marian R. Silling, have requested that we find an overpayment in their tax for the year 1951 if the issue herein is decided in their favor since respondent's deficiency notice makes another adjustment, which is not here in issue, reducing their taxable income for 1951 in the amount of $527.26.↩